IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

POTENCIANO L. AGGARAO, JR.          :
                                     :
                                     :
   v.                                :   Civil Action No. CCB-09-3106
                                     :
                                     :
MITSUI O.S.K. LINES, LTD., et al.   :
                                     :
                                     :

## MEMORANDUM

Plaintiff Potenciano Aggarao, Jr. has sued Mitsui O.S.K. Lines, Ltd.; MOL Ship Management Co., Ltd.; Nissan Motor Car Carrier Co., Ltd.; World Car Carriers, Inc.; and World Marine Co., Ltd. ("the defendants") for negligence pursuant to general maritime law and the Jones Act, 46 U.S.C. § 30401; unseaworthiness; maintenance and cure; and violation of the Seaman's Wage Act, 46 U.S.C. § 10313. Now pending before the court is the defendants' motion to dismiss based on a forum selection clause or, in the alternative, for summary judgment. For the reasons stated below, the defendants' motion to dismiss will be granted.

## BACKGROUND

On June 2, 2008, Mr. Aggarao, a Filipino citizen, entered into a Philippine Overseas Employment Administration Contract of Employment ("POEA Contract") with Magsaysay Mitsui O.S.K. ("Magsaysay Mitsui") for employment aboard the M/V ASIAN SPIRIT, an ocean-going cargo ship. Magsaysay Mitsui is a Philippine crewing company that acted as an agent on behalf of MOL Ship Management Co., Ltd. ("MOL"), a Japanese company that managed the

1

ASIAN SPIRIT,[1] and World Car Carriers, Inc. ("World Car"), a Liberian company that owned the ASIAN SPIRIT.[2] At the time of Mr. Aggarao's employment on the ASIAN SPIRIT, Nissan Motor Car Carriers ("Nissan") was the time charterer of the ship.[3]

The POEA Contract signed by Mr. Aggarao incorporated the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On-Board Ocean Going Vessels ("POEA Terms"). The Philippine Overseas Employment Administration ("POEA"), a government agency, drafted both the POEA Contract and POEA Terms to ensure minimum employment standards for Filipino seamen employed by foreign corporations. The POEA Terms included a mandatory arbitration clause providing that "[i]n cases of claims and disputes arising from this employment, the parties covered by a collective bargaining agreement shall submit the claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of arbitrators." (Pl.'s Opp'n to Defs.' Mot. to Dismiss, Ex. 10 at Section 29). The POEA Terms also included a choice of law clause providing that "[a]ny unresolved dispute, claim or grievance arising out of or in connection with this Contract . . . shall be governed by the laws of the Republic of the Philippines, international conventions, treaties and covenants where the Philippines is a signatory." (*Id.* at Section 31).

On June 3, 2008, one day after he signed the POEA Contract, Mr. Aggarao entered into a Seafarers Employment Contract ("Seafarers Contract") with MOL that incorporated terms of the IBF Collective Bargaining Agreement ("CBA"). Both World Car, the manager of the ASIAN SPIRIT, and Nissan, the time charterer, were bound to the CBA through the IBF Special

---

[1] As manager, MOL was responsible primarily for providing and managing the officers and crew and served as Mr. Aggarao's direct employer on the ASIAN SPIRIT.
[2] As owner, World Car was ultimately responsible for the running and manning of the ASIAN SPIRIT.
[3] As the time charterer, Nissan was responsible for instructing the ASIAN SPIRIT on where to go and what cargo to carry.

Agreement. On or about June 3, 2008, the POEA approved the Seafarers Contract as enforceable.[4]

On August 13, 2008, the ASIAN SPIRIT was proceeding in the Chesapeake Bay towards the Port of Baltimore where it was scheduled to load a cargo of motor vehicles. Mr. Aggarao was assigned to the task of raising floor panels within the ship in preparation for the loading of cargo. Tragically, as his crew began raising certain floor panels, Mr. Aggarao was crushed between a deck lifting machine and a pillar. Mr. Aggarao was taken to University of Maryland Shock Trauma Center, where he was treated for injuries to his spinal column and cord, his chest cavity, and his abdomen. Mr. Aggarao was then sent to Kernan Rehabilitation Hospital for follow-up treatment. On December 4, 2008, Kernan Hospital advised Mr. Aggarao that he had completed his course of rehabilitation and that he could be discharged to return to the Philippines. The defendants informed Mr. Aggarao that they would arrange for his repatriation and would provide further benefits and appropriate medical care in the Philippines pursuant to the POEA Contract and Philippine law. Mr. Aggarao refused these offers for repatriation.

On June 16, 2009, Mr. Aggarao filed a complaint in the United States District Court for the Eastern District of New York alleging negligence pursuant to the Jones Act and general maritime law, unseaworthiness, maintenance and cure, and violation of the Seaman's Wage Act. On June 29, 2009, the defendants, allegedly unaware that Mr. Aggarao had filed his complaint, settled Mr. Aggarao's bills for all hospitalization and medical treatment in the amount of $944,530.99.

On November 17, 2009, this case was transferred from the Eastern District of New York

---

[4] Neither Mitsui O.S.K. Lines, Ltd., nor World Marine Co., Ltd., appear to have any responsibility for the unfortunate events. Accordingly, they also will be dismissed.

to this court by stipulated order. On January 21, 2010, the defendants filed a motion to dismiss or, in the alternative, for summary judgment based upon a forum selection clause.

## ANALYSIS

A motion to dismiss based on a forum-selection clause is treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue. *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006). Treating a motion to dismiss based on a forum-selection clause under 12(b)(3) "allows the court to freely consider evidence outside the pleadings." *Sucampo*, 471 F.3d at 549-50. The defendants move to dismiss pursuant to Rule 12(b)(3) on the grounds that Mr. Aggarao's POEA Contract contains an arbitration clause that permits him to pursue his claims only in arbitration under the law of the Philippines.

The Supreme Court has consistently emphasized that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). This federal policy favoring arbitration "applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 631 (1985); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972) ("[I]n light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside."); *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216, 220 (5th Cir. 1998) ("Forum selection clauses are important in international cases such as the instant cause because there is much uncertainty regarding the resolution of disputes. Ocean-going vessels travel through many jurisdictions, and could become

4

subject to the laws of a particular jurisdiction solely upon the fortuitous event of an accident.").

In 1970, Congress formally recognized the federal policy favoring arbitration in the field of international commerce through the implementation of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"). 9 U.S.C. §§ 201-208. The Convention applies to "[a]n arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered commercial" and allows a court to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." *Id.* at §§ 202, 206. The Fourth Circuit has not established a rule for when courts should compel arbitration pursuant to the Convention. Other federal courts have applied a four-part test requiring a court to compel arbitration if: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen. *See, e.g.*, *Balen v. Holland America Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009); *Bautista v. Star Cruises*, 396 F.3d 1289, 1294-95 n.7 (11th Cir. 2005); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 273 (5th Cir. 2002). If an arbitration agreement satisfies this four-part test, a court must order arbitration unless one of the Convention's affirmative defenses applies.[5] *See Bautista*, 396 F.3d at 1294-95.

The parties do not dispute factors two and four. The arbitration clause at issue provides for arbitration in the Philippines, a signatory of the Convention, and Mr. Aggarao is a citizen of the Philippines. The parties disagree as to whether elements one and three are met in this case. Mr. Aggarao specifically disputes whether a written agreement to arbitrate exists between the

---
[5] Mr. Aggarao does not argue that an affirmative defense applies in this case.

parties and whether the employment contract constitutes a commercial legal relationship.

### A. *A written arbitration agreement exists*

For the Convention to apply there must be an agreement in writing between the parties to arbitrate the dispute in question. The one-page POEA Contract signed by Mr. Aggarao does not itself contain an arbitration clause. Instead the contract states that "the terms and conditions in accordance with Department Order No. 4 and Memorandum Circular No. 9 . . . shall be strictly and faithfully observed." (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at Ex. 9). Department Order No. 4 and Memorandum Circular No. 9 incorporate the POEA Terms, including Section 29's arbitration clause requiring that "claims and disputes arising from [Plaintiff's] employment" be arbitrated before a voluntary panel of arbitrators. (*See id.* at Ex. 10). Mr. Aggarao does not dispute that the POEA Contract he signed on June 2, 2008 contains a mandatory arbitration clause. Mr. Aggarao contends that the Seafarers Contract he signed on June 3, 2008 either superseded or modified the POEA Contract to remove the mandatory arbitration clause. (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 24-30).

As a background matter, the POEA Contract is a contract the Filipino government promulgated to protect its seaman. *See, e.g.*, *In the Matter of the Complaint of Eternity Shipping, Ltd.*, 444 F. Supp. 2d 347, 380-81 (D. Md. 2006). The POEA terms were drafted by a coalition of representatives from the government, representatives of employers, labor unions, religious groups, and civic groups representing seaman. "This is not, therefore, a case in which the United States must intervene to protect an oppressed seaman." *Id.* at 381. The POEA requires any shipowner seeking to hire a Filipino seaman to enter into a POEA-approved contract. As explained in *Eternity Shipping*:

6

> This contract is comprehensive and governs a seaman's working conditions, including his hours, overtime pay, and leave. It establishes a specific procedure for the ship's master to follow in disciplining a seaman and lists the penalties to be imposed for specific offenses. It also recognizes the many perils that seamen face at sea, specifying the compensation that a shipowner must pay a seaman if he is injured or falls ill during his employment or if his personal effects are damaged on board. When a dispute arises, the contract requires adjudication in the Philippines, thus ensuring a homeland forum."

*Id.*

The POEA Terms represent minimum requirements for an employment contract with a Filipino seaman. Memorandum Circular No. 9 specifically states that "[t]he terms and conditions provided therein are the minimum requirements acceptable to the POEA for the employment of Filipino seafarers on board ocean-going vessels. The parties to the contract may therefore improve on the minimum terms and conditions provided that such improvements shall be made in writing and appended to the contract for employment." (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at Ex. 20). Based on this provision, Mr. Aggarao asserts that the Seafarers Contract he signed on June 3, 2008 "constituted a novation" of the POEA Contract and Terms because the Seafarers Contract, which incorporated the CBA, "materially alter[ed] essentially every term of the [POEA Contract and Terms]." (*Id.* at 27).

To constitute a novation, the party asserting it must demonstrate four elements: "(1) [a] previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution of the new one." *I.W. Berman Properties v. Porter Bros., Inc.*, 344 A.2d 65, 70 (Md. 1975).[6] "A novation is never presumed; the party asserting it must establish clearly and satisfactorily that there was an intention, concurred in by all the parties, that the existing obligation be discharged

---

[6] The court does not suggest that Maryland law applies, but only that the *Berman* case states general principles of contract law applicable to a claim of "novation."

by the new obligation." *Id.* Here, there is no indication, either expressed or implied, that both parties intended the Seafarers Contract to constitute a novation of the POEA Contract and Terms. In fact, there is direct evidence to suggest the contrary—i.e. that the Seafarers Contract and the CBA was not meant to supersede the POEA Contract.

First, there is no explicit language in the Seafarers Contract or the CBA stating that either supersedes the POEA Contract. Second, the one page POEA Contract signed by Mr. Aggarao on June 2, 2008 specifically states, "Any alterations or changes, in any part of this Contract shall be evaluated, verified, processed and approved by the [POEA]. Upon approval, the same shall be deemed an *integral part* of the Standard Terms and Conditions Governing the Employment of Filipino Seafarers On Board Ocean-Going Vessels." (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at Ex. 9) (emphasis added). In other words, the POEA Contract states in plain language that any alterations agreed upon by the parties shall be incorporated into the POEA Contract upon approval by the POEA. *See Doe v. Royal Caribbean Cruises, Ltd.*, 365 F. Supp. 2d 1259, 1262 (S.D. Fla. 2005) (rejecting a similar claim by a plaintiff who asserted that a supplemental agreement to the POEA Contract that did not include an arbitration clause replaced the POEA Contract: "[the supplemental agreement] stands as a source of additional terms and conditions governing Plaintiff's employment, but does not replace the previously signed contract. The Agreement does not supplant the Standard Terms which govern employment of Filipino seaman."). Third, Section 29 of the POEA Terms explicitly requires parties covered by collective bargaining agreements outside of the POEA Contract to submit to arbitration. Section 29 states, "the parties covered by *collective bargaining agreements shall* submit [their] claim or dispute to the original and exclusive jurisdiction of the voluntary arbitrator or panel of

arbitrators." (*Id.* at Ex. 10) (emphasis added). Accordingly, it does not appear that the Seafarers Contract or the CBA constituted a novation of the POEA Contract and Terms.

Also unpersuasive is Mr. Aggarao's argument in the alternative that the Seafarers Contract and the CBA modified the POEA Contract so as to repeal the mandatory arbitration clause. "When a party seeking to avoid arbitration contends that the clause providing for arbitration has been superseded by some other agreement, 'the presumptions favoring arbitrability must be negated expressly or by clear implication.'" *Zandford v. Prudential-Bache Sec., Inc.*, 112 F.3d 723, 727 (4th Cir. 1997) (citing *Nolde Bros., Inc. v. Local No. 358, Bakery and Confectionery Workers Union*, 430 U.S. 243, 255 (1977)). Mr. Aggarao contends that Article 28 of the CBA "provides a detailed proceeding which is in direct contrast to the supposed arbitration clause requirements" of the POEA Contract. (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 27). This is not correct. Article 28 provides for disability compensation and states that "[a]ny payment effected under [Article 28] shall be without prejudice to any claim for compensation made in law, but may be deducted from any settlement in respect of such claims." (*Id.* at Ex. 12). At best, Article 28 is ambiguous regarding how employees like Mr. Aggarao may proceed to recover compensation. It does not provide for access to a particular court or other forum. Moreover, when read in context with the POEA Contract, Section 28 of the CBA cannot be interpreted to expressly negate the mandatory arbitration clause in Section 29 of the POEA Terms. *See De Joseph v. Odfjell Tankers (USA), Inc.*, 196 F. Supp. 2d 476, 480 (S.D. Tex. 2002) (holding that a supplemental contract term providing for an internal dispute resolution system and stating that it "shall be without prejudice to any action that the parties may take before the appropriate authority" could not be "interpreted in a vacuum" and did not repeal the mandatory

9

arbitration clause in the POEA Terms). Accordingly, there is an agreement in writing to arbitrate the dispute between the parties in the POEA Contract and Terms as required by the Convention.

Mr. Aggarao also argues that, even if the arbitration clause is enforceable by Defendant MOL, Defendants World Car and Nissan are not entitled to enforce the arbitration clause because they are nonsignatories to the POEA Contract. It is well-established that "in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416-17 (4th Cir. 2000). The Fourth Circuit has acknowledged five theories arising out of common law principles of contract and agency law that could provide a basis for allowing nonsignatories to enforce arbitration agreements: (1) incorporation by references; (2) assumption; (3) agency; (4) piercing of the corporate veil; and (5) estoppel. *Id.* at 417 (citing *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

The doctrine of equitable estoppel applies here. The application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause "raises allegations of . . . substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 396 (4th Cir. 2005) (internal citations omitted). "Otherwise, the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Id.* All of Mr. Aggarao's claims against the defendants arise from the circumstances leading up to his accident on the ASIAN SPIRIT, which he alleges amounted to "concerted misconduct" by all the defendants, including World Car and Nissan. To force Mr. Aggarao into arbitration with MOL, but allow him to proceed against World Car and

Nissan in this court, would effectively thwart the federal policy in favor of arbitration.[7]
Accordingly, Mr. Aggarao's assertion that World Car and Nissan cannot enforce the arbitration agreement because they are nonsignatories to the POEA Contract is rejected.

### B. *Agreement arises out of a commercial relationship*

Mr. Aggarao also contends that the POEA Contract does not constitute a commercial relationship under the Convention. Mr. Aggarao specifically asserts that Federal Arbitration Act (FAA) exemption for seamen's employment contracts prohibits the defendants from enforcing the POEA Contract arbitration clause against him under the Convention. (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 48-60). The Fourth Circuit has not yet determined whether the FAA exemption for seamen's employment contracts applies to arbitration agreements covered by the Convention. Three circuits have addressed the issue, however, and all three have held that the FAA exemption does not apply to the Convention.

While the Convention does limit the enforceability of arbitration agreements to those that arise out of legal relationships that are considered "commercial," 9 U.S.C. § 202, the Convention makes no mention of the exclusion for seaman employment contracts referenced in § 1 of the FAA. *See* 9 U.S.C. § 202; *see also Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1155 (9th Cir. 2008) ("Because the exemption clause does not affect the definition of 'commerce' or the statutory description of which relationships are 'considered as commercial,' the exemption is not incorporated into the Convention Act by virtue of Section 202."); *Bautista*, 396 F.3d at 1298 ("The Convention Act's reference to section 2 does not indicate an intent to limit the definition

---

[7] To support his argument that World Car and Nissan cannot enforce the arbitration clause Mr. Aggarao cites to an unreported case, *Razo v. Nordic Empress Shipping Ltd.*, No. 07-5745, 2008 WL 2902184 (D.N.J. July 24, 2008). In *Razo*, the court refused to allow a nonsignatory shipowner to enforce an arbitration clause against the plaintiff on the grounds that no principal-agent relationship existed between the shipowner and the bareboat charterer. Because the doctrine of estoppel applies here, and not common law agency principles, *Razo* is unpersuasive.

11

of 'commercial' to those described in section 2 of the FAA as modified by section 1; the expansive term 'including' would be superfluous if the FAA provided the full and complete definition."); *Francisco v. Stolt Achievement MT*, 293 F.3d 270, 274 (5th Cir. 2002) ("Neither the Convention nor the limiting language ratifying the Convention contemplate any exception for seamen employment contracts or employment contracts in general."). This court agrees and holds that the Convention applies to the enforcement of arbitration clauses in the employment contracts of seamen.

C. *Enforcement of the arbitration clause does not waive plaintiff's Jones Act and Seaman's Wage Claim rights*

Finally, Mr. Aggarao claims that enforcement of the arbitration clause and choice of law provisions pursuant to the POEA Contract would violate U.S. public policy because it would require him to abandon his Jones Act and Seaman's Wage Claim rights. There is nothing in the record indicating that Mr. Aggarao would forfeit or be deprived of any substantive rights by arbitration.

Courts have held that the arbitration clause in the standard POEA Contract "encompasses tort causes of action and requires [a] seaman to litigate his negligence and unseaworthiness claims before [an arbitration panel]." *Eternity*, 444 F. Supp. 2d at 378; *see also Francisco*, 293 F.3d at 278 (holding that a POEA contract "clearly provides remedies for work-related personal injuries."); *Marinechance*, 143 F.3d at 222-23 (holding that "[t]here is nothing in these clauses that justifies limiting their application to contract claims" and that the arbitration clause "includes tort causes of action arising during the course of employment between the seaman and [the employer.]"). In *Eternity*, a judge in this district upheld the enforceability of an arbitration clause despite the plaintiff's claim that doing so would deprive her of the right to recovery under

12

the Jones Act, 46 U.S.C. § 30104.[8] *Eternity*, 444 F. Supp. 2d at 384 (explaining that the analysis regarding whether a POEA Contract arbitration clause is enforceable "does not change merely because [the plaintiff] might recover more than the contractually stipulated $50,000 in a Jones Act suit."). The plain language of the POEA Terms encompasses all "claims and disputes arising from this employment," suggesting that disputes over both contractual terms and personal injury claims must be addressed through arbitration. Thus, Mr. Aggarao's assertion that enforcement of the arbitration clause will force him to waive his right to assert a personal injury claim has no basis.

Likewise, Mr. Aggarao's assertion that enforcing the arbitration clause will violate the Seaman's Wage Act, 46 U.S.C. § 10313, is unpersuasive. Mr. Aggarao argues that *U.S. Bulk Carriers, Inc. v. Arguelles*, 400 U.S. 351 (1971), prohibits arbitration agreements from divesting courts of jurisdiction over seafarer wage disputes under 46 U.S.C. § 10313.[9] In *Arguelles*, the Supreme Court held that a seaman could choose between proceeding with arbitration and proceeding in court because Congress had not clearly made arbitration mandatory. *Arguelles*, 400 U.S. at 357-58. Other federal circuit courts have held, however, that Congress made clear that arbitration clauses qualifying under the Convention must be enforced, and therefore, *Arguelles* does not apply in this context. *See, e.g.*, *Balen*, 583 F.3d at 653 ("[T]he Convention specifically and expressly compels federal courts to enforce arbitration agreements. Therefore, *Arguelles* does not alter our conclusion that the exemption clause does not apply to the

---

[8] The Jones Act provides that "[a] seaman injured in the course of employment . . . may elect to bring a civil action at law, with the right of trial by jury, against the employer."
[9] Mr. Aggarao also points to *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009) to support his argument. While the Eleventh Circuit did hold that an arbitration provision was not enforceable with regard to an employee's claim under the Seaman's Wage Act, the court did so because the wage dispute arose out of employment that occurred prior to the signing of the arbitration clause. *Thomas*, 573 F.3d at 1118. Accordingly, *Thomas* is easily distinguishable from this case.

Convention Act.") (internal citations omitted); *Rogers*, 547 F.3d at 1156 ("[T]he Convention Act overcomes any presumption deriving from Section 10313(i) that the courts shall remain open to foreign seafarers in a case in which a seafarer has signed an otherwise enforceable agreement to arbitrate a wage claim."); *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 907-08 (5th Cir. 2005) (requiring arbitration of claims brought by seamen under the Fair Labor Standards Act). This court agrees with the federal circuit courts that the Convention "specifically and expressly compels federal courts to enforce arbitration agreements." *Balen*, 583 F.3d at 653. Because the arbitration clause at issue qualifies under the Convention, it must be enforced.[10]

### **Conclusion**

For the foregoing reasons, the defendants' motion to dismiss pursuant to Rule 12(b)(3) for improper venue will be granted. A separate Order follows.


September 30, 2010               _____/s/_____
Date                             Catherine C. Blake
                                 United States District Judge

---

[10] I have received Mr. Hofman's recent letter. I do not doubt and indeed regret the severity of Mr. Aggarao's medical condition. Unfortunately, that does not alter the requirement for arbitration of this case.